IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY, as subrogee of Pacific West Communities Inc., <br><br> Plaintiff, <br><br> v. <br><br> TRANE TECHNOLOGIES, PLC, and SWEP NORTH AMERICA, INC., <br><br> Defendants. | **COMPLAINT AND JURY DEMAND** |

Plaintiff LEXINGTON INSURANCE COMPANY ("AIG"), as subrogee of Pacific West Communities Inc., by and through their undersigned attorneys complain as follows:

## PARTIES

1. Plaintiff LEXINGTON INSURANCE COMPANY ("Plaintiff") is a Delaware corporation with its principal place of business located in Boston, Massachusetts, duly authorized to transact and conduct business of insurance in the State of Wyoming. At all relevant timeframes set forth herein, Plaintiff provided property insurance to Pacific West Communities Inc. that insured its property located at 2076 Sheridan Avenue, in Sheridan, Wyoming.

2. Plaintiff's Insured, Pacific West Communities Inc. (the "Insured"), is a Wyoming corporation with a principal address of 430 E State St., Suite 100, Eagle, Idaho 83616.

3. Upon information and belief, Defendant TRANE Technologies, PLC ("TRANE") is an Ireland corporation with its United States headquarters in Davidson, North Carolina, doing business or authorized to do business in the State of Wyoming.

4. Upon information and belief, Defendant SWEP North America, Inc. ("SWEP") is a Delaware corporation with its principal place of business in Duluth, Georgia and SWEP transacts a significant amount of business with TRANE as a supplier.

## JURISDICTION AND VENUE

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendant TRANE is domiciled in the State of North Carolina where this Court is located.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and the parties are citizens of different States.

## GENERAL ALLEGATIONS

7. At all times relevant, Plaintiff issued a policy of insurance that insured Pacific West's property located at 2076 Sheridan Avenue, in Sheridan, Wyoming ( "Building").

8. Prior to June 4, 2020, TRANE provided for installation a fire suppression system in the Building using CPVC Piping ("System") designed, manufactured, and/or distributed by Defendant.

9. The Building was equipped with a fire suppression system in which the System served the dual function as both supply for the fire suppression system, as well as delivery and return of chilled water to the air handler units throughout the Building.

10. On June 4, 2020, a leak in the System was identified, at which time the flow of water through the System was stopped and the leak was repaired.

11. However, once resumed, 18 additional fractures in the System were discovered, forcing the Insured to repair the System and resultant water damage.

12. Investigation revealed that the cause of the damage was Defendant TRANE's use of a faulty heat exchanger ("Heat Exchanger") with improper brazing which caused polyol ester

2

lubricant to spread through the System, and due to its incompatibility with CPVC piping, the fractures occurred.

13. Defendant SWEP manufactured the Heat Exchanger, then supplied it to TRANE.

14. Upon information and belief, Defendant TRANE provided the installer with the faulty Heat Exchanger.

15. The water damage and repair of the System caused damages in excess of $518,728.45.

16. As of result of the damages incurred, the Insured made a claim to AIG, and under the terms of the Policy, AIG paid the Insured $518,728.45 in insurance proceeds, although the claim has not fully resolved and additional claim payments may be made.

17. As a result of the payment, AIG is subrogated to the Insured and its rights of recovery against Defendant.

WHEREFORE, Plaintiff respectfully requests that this Court award to Plaintiff a judgment against Defendant in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

## COUNT I – NEGLIGENCE AS TO TRANE

18. Plaintiff hereby incorporate by reference all preceding paragraphs as if fully stated herein.

19. Defendant TRANE owed a duty to the Insured to exercise reasonable care in the planning, designing, and manufacturing of the System in order to ensure that it was reasonably safe for its intended purpose.

20. Defendant TRANE breached this duty by the following acts or omissions:

   a. Failing to properly design the System to prevent it from failure during normal and foreseeable use;

3

b. Improperly manufacturing the System in a manner that left it vulnerable to failure during ordinary use;

    c. Failing to test or otherwise inspect the Heat Exchanger prior to installation; and

    d. Any other acts and omissions that become known during the course of discovery.

21. The water damage and repair of the System caused damages in excess of $518,728.45.

22. As of result of the damages incurred, the Insured made a claim to AIG, and under the terms of the Policy, AIG paid the Insured $518,728.45 in insurance proceeds, although the claim has not fully resolved and additional claim payments may be made.

23. As a result of the payment, AIG is subrogated to the Insured's rights of recovery against Defendant TRANE.

WHEREFORE, Plaintiff respectfully request that this Court award to Plaintiff a judgment against Defendant TRANE in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

### **COUNT II – STRICT PRODUCTS LIABILITY AS TO TRANE**

24. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully stated herein.

25. At all pertinent times herein, Defendant TRANE was in the market of manufacturing, assembling, designing, producing, inspecting, selling, and/or otherwise placing into the stream of commerce fire suppression systems and heat exchangers, such as that which caused the subject damages.

26. Defendant TRANE, in whole or in part, manufactured, assembled, designed, produced, inspected, and/or sold the Heat Exchanger in the System and/or placed the Heat Exchanger and System into the stream of commerce.

27. At the time the System and Heat Exchanger left the control of Defendant TRANE, a defect existed that rendered the Heat Exchanger and System unreasonably dangerous.

28. Defendant TRANE knew or reasonably should have known that the Heat Exchanger and System would be used by the Insured and/or other consumers without inspection for defects, such as the defect which caused the subject loss.

29. The defective nature of the Heat Exchanger and System was neither plainly apparent nor discoverable by the Insured or other consumers through a reasonable inspection.

30. The Heat Exchanger and System were only used for their intended purpose and were not altered after Defendant manufactured, assembled, designed, produced, inspected, sold, and/or placed the Heat Exchanger and System into the stream of commerce.

31. The Heat Exchanger and System was designed to be used by consumers, such as the Insured, with no changes in the condition in which it left Defendant's control.

32. The water damage and repair of the System caused damages in excess of $518,728.45.

33. As of result of the damages incurred, the Insured made a claim to AIG, and under the terms of the Policy, AIG paid the Insured $518,728.45 in insurance proceeds, although the claim has not fully resolved and additional claim payments may be made.

34. As a result of the payment, AIG is subrogated to the Insured's rights of recovery against the Defendant TRANE.

WHEREFORE, Plaintiff respectfully requests that this Court award to Plaintiff a judgment against Defendant TRANE in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

### COUNT III – BREACH OF IMPLIED WARRANTY AS TO TRANE

35. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully stated herein.

36. Defendant TRANE impliedly warranted that the Heat Exchanger and System were fit for their intended purpose under normal and anticipated use.

37. However, in the course of normal and anticipated use, the Heat Exchanger and System failed.

38. The water damage and repair of the System caused damages in excess of $518,728.45.

39. As of result of the damages incurred, the Insured made a claim to AIG, and under the terms of the Policy, AIG paid the Insured $518,728.45 in insurance proceeds, although the claim has not fully resolved and additional claim payments may be made.

40. As a result of the payment, AIG is subrogated to the Insured's rights of recovery against Defendant.

WHEREFORE, Plaintiff respectfully requests that this Court award to Plaintiff a judgment against Defendant TRANE in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

### COUNT IV – NEGLIGENCE AS TO SWEP

1. Plaintiff hereby incorporate by reference all preceding paragraphs as if fully stated herein.

2. Defendant SWEP owed a duty to the Insured to exercise reasonable care in the planning, designing, and manufacturing of the Heat Exchanger in order to ensure that it was reasonably safe for its intended purpose.

3. Defendant SWEP breached this duty by the following acts or omissions:

   a. Failing to properly manufacture the Heat Exchanger in a manner to prevent damage from occurring during normal and foreseeable use;

   b. Improperly brazing the Heat Exchanger in a manner to prevent damage during ordinary use; and

   c. Any other acts and omissions that become known during the course of discovery.

4. The water damage and repair of the System caused damages in excess of $518,728.45.

5. As of result of the damages incurred, the Insured made a claim to AIG, and under the terms of the Policy, AIG paid the Insured $518,728.45 in insurance proceeds, although the claim has not fully resolved, and additional claim payments may be made.

6. As a result of the payment, AIG is subrogated to the Insured's rights of recovery against Defendant SWEP.

WHEREFORE, Plaintiff respectfully requests that this Court award to Plaintiff a judgment against Defendant SWEP in an amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

### COUNT V – STRICT PRODUCTS LIABILITY AS TO SWEP

7. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully stated herein.

8. At all pertinent times herein, Defendant SWEP was in the market of manufacturing, assembling, designing, producing, inspecting, selling, and/or otherwise placing into the stream of commerce heat exchangers, such as that which caused the subject damages.

9. Defendant SWEP, in whole or in part, manufactured, assembled, designed, produced, inspected, and/or sold the Heat Exchanger and/or placed the Heat Exchanger into the stream of commerce.

10. At the time the Heat Exchanger left the control of Defendant SWEP, a defect existed that rendered the Heat Exchanger unreasonably dangerous. The Heat Exchanger was defective in manufacture, design and/or warning.

11. Defendant SWEP knew or reasonably should have known that the Heat Exchanger would be used by the Insured and/or other consumers without inspection for defects, such as the defect which caused the subject loss.

12. The defective nature of the Heat Exchanger was neither plainly apparent nor discoverable by the Insured or other consumers through a reasonable inspection.

13. The Heat Exchanger was only used for its intended purpose and was not altered after Defendant SWEP manufactured, assembled, designed, produced, inspected, sold, and/or placed it into the stream of commerce.

14. The Heat Exchanger was designed to be used by consumers, such as the Insured, with no changes in the condition in which it left Defendant SWEP's control.

15. As a direct and proximate result of the defect(s) in the Heat Exchanger, the Heat Exchanger failed and caused water to escape the System and cause significant damage to the Property causing $518,728.45 in damages.

16. As of result of the damages incurred, the Insured made a claim to AIG, and under the terms of the Policy, AIG paid the Insured $518,728.45 in insurance proceeds.

17. As a result of the payment, AIG is subrogated to the Insured's rights of recovery against the Defendant SWEP.

WHEREFORE, Plaintiff respectfully requests that this Court award to Plaintiff a judgment against Defendant SWEP in amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

### **COUNT VI – BREACH OF IMPLIED WARRANTY AS TO SWEP**

18. Plaintiff hereby incorporates by reference all preceding paragraphs as if fully stated herein.

19. Defendant SWEP impliedly warranted that the Heat Exchanger was fit for its intended purpose under normal and anticipated use.

20. However, in the course of normal and anticipated use, the Heat Exchanger failed.

21. The water damage and repair of the System caused damages in excess of $518,728.45.

22. As of result of the damages incurred, the Insured made a claim to AIG, and under the terms of the Policy, AIG paid the Insured $518,728.45 in insurance proceeds, although the claim has not fully resolved, and additional claim payments may be made.

23. As a result of the payment, AIG is subrogated to the Insured's rights of recovery against Defendant.

WHEREFORE, Plaintiff respectfully requests that this Court award to Plaintiff a judgment against Defendant SWEP in amount to be proven at trial, together with costs, interest, expenses, fees, and any other relief this Court deems just and appropriate.

Dated: June 2, 2023                           Respectfully submitted,

/s/Brittany N. Conner
Fred W. Devore, III, NC Bar No. 10308
Brittany N. Conner, NC Bar No. 53913
DEVORE, ACTION & STAFFORD, PA
438 Queens Road
Charlotte, NC 28207
Phone: (704) 377-5242
Fax: (704) 332-2825
Email: fdevore@devact.com
           bconner@devact.com


Andrew E. Barrett*
Denenberg Tuffley, PLLC
28411 Northwestern Hwy., Suite 600
Southfield, Michigan 48034
(248) 549-3900; (248) 593-5808 (fax)
abarrett@dt-law.com

COUNSEL FOR PLAINTIFF LEXINGTON INSURANCE COMPANY
*Pending Pro Hac Vice

10